PROVIDENCE ICE COMPANY *vs.* WILLIAM E. BOWEN.

JULY 6, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Sales. Submitting of offer.*

Where a contract for the sale of ice to be harvested by the seller during a certain period named a minimum price and provided that in case the seller received a *bona fide* written offer from third parties of a greater price, the buyer was required to pay one-half of the increase or forfeit the amount of

ice for which such offer had been made, the seller was not required to submit the offer for the inspection of the buyer.

### (2) Sales. Election.

Where a contract for the sale of ice to be harvested by the seller during a certain period named a minimum price and provided that buyer should pay in addition thereto one-half of the difference between such price and the price offered the seller by *bona fide* written offer of a third party or forfeit the ice so offered to be bought and the seller gave notice to the buyer of the receipt of offers the buyer was thereupon required to elect whether to pay the increased price or forfeit his right to the ice, although the notice did not state that the offers were *bona fide* and in writing, where the buyer made no objection to the form of the notice given him by seller.

### (3) Trial.

In an action by a buyer for failure to deliver, following the buyer's failure to elect between paying an increased price or forfeiting the right to ice on the seller's receipt of *bona fide* written offers from third persons to purchase ice at an increased price, under the provision of the contract requiring him to do so, in which action it was claimed that offers which the seller claimed to have received from third persons were not in fact *bona fide*, instruction to the jury that seller offered to have the *bona fide* character of the offers ascertained by certain designated persons, and that buyer offered no constructive criticism of the *bona fide* character of the offers, and that seller was not asked, nor was any suggestion made by the buyer as to what such an examination should be, held not error, in view of the uncontradicted testimony.

### (4) Refusal of Request to Charge.

Refusal of requested instructions based on assumption of fact not warranted by the evidence was proper.

### (5) Sales.

Where a buyer had requested the seller to ship only the amount of goods requested by third persons, the buyer could not complain that the seller shipped less than the amount per day called for by the contract where the third person called for less than such amount.

### (6) Sales.

Where the contract of sale of ice to be harvested by the seller during a certain period named a minimum price and provided that the buyer should pay in addition thereto, one-half the difference between such price and the price offered the seller by a *bona fide* written offer of a third person or should forfeit the amount of ice covered by such offer, and where the buyer on receiving the notice from the seller of such offer claimed the right to inspect the offer to ascertain its *bona fide* character and on the seller's refusal to submit the offer for inspection, the buyer did not elect to take the ice at the increased price, the seller was justified in concluding that the buyer did not intend to decide whether it would forfeit the ice until after it was permitted to inspect the offer.

(7)  *Sales.*

In an action by a buyer for failure to deliver ice under the contract of sale of a portion of the ice to be harvested by the seller during a certain period, naming a minimum price and providing that the buyer should pay in addition thereto, one-half the difference between such price and the price offered by a *bona fide* written offer of a third person or forfeit the ice covered by such offer, in which the defense was that the buyer had forfeited the ice remaining to be delivered under the contract by his failure to elect to take the ice at the increased price on the seller's receipt of offers from third persons, a refusal to charge that the buyer was entitled to delivery of the ice not forfeited, at the minimum price, was not error where the buyer had forfeited the amount of ice remaining to be delivered under the contract.

(8)  *Sales.*

Where a contract of sale of a portion of the ice to be harvested by the seller during a certain period named a minimum price and provided that the buyer should pay in addition thereto, one-half of the difference between such price and the price offered the seller by *bona fide* written offers of third persons or forfeit the ice covered by such offers, seller was not required to dispose of the ice not covered by the contract, before requiring the buyer to elect on receipt of third persons' offers.

(9)  *Sales.*

In an action by a buyer for failure to deliver ice under a contract of sale of a portion of the ice to be harvested by the seller during a certain period, naming a minimum price, and providing that the buyer should pay in addition thereto one-half the difference between such price and the price offered by *bona fide* offers of third persons or forfeit the ice covered by said offers, in which the defense was that the buyer had forfeited the ice remaining to be delivered under the contract by his failure to elect to take the ice at the increased price on the seller's receipt of offers from third persons the question of whether seller had *bona fide* offers in writing from third persons was one of fact for the jury.

(10)  *Sales.*

Where a contract of sale of a portion of the ice to be harvested by the seller during a certain period named a minimum price and provided that the buyer should pay in addition one-half of the difference between such price and the price named in *bona fide* written offers of third persons or forfeit the ice covered by such offers and where on receipt of such offers from third persons the seller had sufficient ice in addition to that covered by contract with buyer, to sell to third persons, the seller's acceptance of offer before giving buyer notice thereof did not preclude him from requiring the buyer to elect whether to pay the increased price or forfeit the ice.

ASSUMPSIT.  Heard on exceptions of plaintiff and overruled.

RATHBUN, J.   This is an action of assumpsit to recover
for an alleged failure to deliver ice in accordance with a
written contract, also to recover the amount of certain
alleged over-payments for ice.   The trial in the Superior
Court resulted in a verdict for the defendant.   The plain-
tiff's motion for a new trial was denied by the justice who
presided at the trial.   The case is before this court on the
plaintiff's exception to the refusal of said justice to grant
said motion for a new trial, also on certain exceptions taken
to the rulings of said justice during the trial.

On January 21, 1916, the parties entered into a written
contract whereby the plaintiff agreed to buy and the defend-
ant agreed to sell for a period of five years $72\frac{1}{2}\%$ of one-half
of all ice harvested by defendant during the term of the
contract and stored in the defendant's ice houses at Abbott
Run, Rhode Island.   The amount so harvested and stored
was to be determined by measurements taken immediately
after each ice harvest.   The minimum price to be paid for
ice was one dollar per ton.   This action is the culmination
of a dispute between the parties as to the interpretation of a
clause of said contract, which clause reads as follows: "In
the event that the party of the first part receives, in writing,
a *bona fide* offer or offers in any year during the term of this
contract, of One Dollar Fifty Cents ($1.50) per ton, or more,
F. O. B. ice houses at Abbott Run or Highland Lake, for
five hundred tons or upwards, it is agreed by the party of
the second part that it will pay to the party of the first part
one-half of the increase in price, in addition to One Dollar
($1.00) per ton, for so much of its ice as the party of the first
part is able to dispose of at the increased price, or forfeit
such an amount of said ice to the party of the first
part."

The plaintiff contends that, upon receiving notice from
the defendant that he had received an offer as specified in
said clause, the plaintiff was not required to elect whether it
would pay the extra price or forfeit the amount of ice named
in said offer until the defendant had submitted said offer

for the plaintiff's inspection. The defendant would at no time consent to this construction.

The controversy arose during the spring and summer of 1918. After the ice harvest of the preceding winter the ice in the Abbott Run ice houses was measured and it was determined that 72½% of one-half of the ice in said houses was 7,343 tons. On March 8, 1918, the defendant wrote the plaintiff, stating, "Now in reference to the portion of ice coming to you under the contract. I have sold 1,000 tons for $2.00 per ton, with the privilege of another 1,000. I will know regarding this amount within a few days, but the first mentioned amount is positively sold. . . . I would like to know between now and Monday if you intend to pay the advance in the price, $1.50 per ton, on the 1,000 tons which were positively sold, as stated above." To the above letter the plaintiff replied: "We ask you to permit us to see your contract for the sale of 1,000 tons of ice at $2.00 per ton and also the contract for the sale of another 1,000 tons at $2.00 per ton, if the latter contract is entered into by you." On March 20, defendant wrote that "there is nothing in the contract that requires me to allow you to inspect or handle any contracts which I may have. . . . Now relative to the 2,000 tons at $2.00 per ton, I will kindly ask whether you will give $1.50 per ton for the 2,000 or release the same." On March 26, 1918, the plaintiff replied: " . . . But in this connection we must say that we insist that it is clearly our right to know that you have a '*bona fide* offer in writing,' etc., according to the terms of the contract. One of the ways in which that can be established is for you to show us the '*bona fide* offer in writing,' and we again repeat our request that you show us the offer or offers, and we reserve all our rights with reference thereto. . . . We can only repeat what we have already said in this, namely: if you have received 'a *bona fide* offer in writing etc., we shall pay you an increased price for some of the Abbott Run ice we have purchased of you, all according to the contract, but we are entitled to know the facts. It is unreasonable to suppose that we may

be successfully called on to stand and deliver without proof.' "
On April 19, 1918, the defendant replied as follows: "I note
that in your favor of the 26th ult., you say that you will
pay the increase for the same. That will not apply to the
2,000 tons which I have already sold, as you did not avail
yourself of the right to take this at the increased price."
The same letter also stated: "I received a *bona fide* offer
some time ago for 1,400 tons of ice from Abbott Run. As
I want a reply as soon as possible, I would like to have you
advise me, on or before Saturday night, April 20, at 6:00
o'clock p. m., if you will pay the difference as expressed in
the contract or not." The plaintiff replied: "As you give
us no figures as to price on this lot it would be impossible
for us to reply to your question as to whether or not we 'will
pay the difference as provided in the contract,' even if we
were so disposed. Our position in reference to the 1,400
tons just mentioned is just the same as with reference to the
other quantities mentioned in your previous favors and our
replies thereto, namely: Show us *bona fide* offers in writing
as described in the contract and we will now and at all times
do just as we have agreed to do." On April 22, 1918, de-
fendant replied: "I regret that the matter of price was
overlooked in my communication of the 19th inst., to you
regarding the amount of 1,400 tons of ice. The offer is for
$2.00 per ton F. O. B. Abbott Run, and from no other place.
I will wait until Wednesday, April 24th, at 6:00 p. m. for a
reply." On May 10, 1918, defendant wrote: "Regarding
the *bona fide* offers for some of that portion of the ice which
might be coming to you, will say that I will allow Mr.
William C. Angell or Mr. A. B. Chace of the Westminster
Bank to look over the offers I have received and advise
your attorney, Mr. Hinckley. This is with a distinct
understanding that they do not give names or addresses of
parties making the offers. They may have them, however,
acknowledge their signatures, if they wish to do so." It
appears from the testimony that at that time Mr. Chace
was president and Mr. Angell cashier of the Westminster

Bank and that Mr. Hinckley and Mr. Bowen were directors of the same bank.   In a letter of May 15, 1918, the plaintiff rejected the above proposal and stated that it did not give the plaintiff the right to which they were entitled under the contract.   On June 7, 1918, defendant wrote, stating that he had *bona fide* offers for 1,700 tons at $2.00 per ton and requested the plaintiff to advise whether they would pay the difference in price.   The letter continued as follows: "I will verify the same, if you wish me to, and place the offers in the hands of Mr. Arnold B. Chace or Mr. William C. Angell, or both if you desire, as I previously offered to in my letter to you of May 10, 1918, and which you declined to accept."   Plaintiff replied, June 8, 1918: "Your offer to 'place the offers in the hands of Mr. Arnold B. Chace or Mr. William C. Angell or both' is the same offer made to us by you under date of May 10th and is subject to the same reply. . . . We have heretofore, perhaps a number of times, informed you what is necessary for you to do in order to establish this year's price, and we are still waiting for reasonable action on your part with reference thereto." In a letter of June 12, 1918, the plaintiff enclosed a check paying for the ice delivered from May 27, to June 1, 1918, at the rate of $1.00 per ton.   Plaintiff stated in this letter that if and when the defendant met the requirements of the contract and established the fact that they were indebted further they would pay such amount if any as may be found to be due.   In a letter of June 28, 1918, the defendant returned said check and notified the plaintiff that he had an offer for 800 tons of ice at the price of $2. per ton and that he was willing to refer the offer to the persons mentioned in his communication of June 7.   The letter also stated that the offer for 800 tons makes a total of 5,900 tons, for which he had received offers in writing.   On July 2, 1918, the plaintiff wrote that its reply relative to this offer was the same as it had made to notices concerning other offers.   On July 3, 1918, defendant wrote, stating that he had duly notified the plaintiff of offers in writing which he had received

for ice at the rate of $2.00 per ton; that he had given the plaintiff every opportunity to live up to the contract; that he had offers for 5,900 tons; that the difference between the 5,900 tons and 7,343 tons was 1,443 tons; that he had shipped the plaintiff more than the latter amount; and that he would ship no ice after July 6, 1918. It was admitted at the trial that the amount shipped by the defendant was 2,358 tons. On July 9, 1918, the plaintiff's attorneys sent the defendant a letter in which it was contended that the plaintiff had performed its contract. The letter stated that failure on the defendant's part to ship ice would constitute a breach of the contract and that the plaintiff was willing to pay an increased price but must have proof that *bona fide* offers in writing had been made to defendant. Thereafter upon receiving a promise from Mr. Hinckley that he would not disclose the names of the persons who had made said offers for ice, the defendant delivered said written offers to Mr. Hinckley who kept them until the following day. On July 30, 1918, the plaintiff wrote, stating that without prejudice and reserving all its rights it would pay $1.50 per ton for the ice shipped during the month of June and from July 1, to July 6, 1918, and for the balance of the ice due for the season, *viz.*, 5,034 tons, as they contended. Said letter contained a check, in payment for ice, at $1.50 per ton, shipped during the last five days of May, 1918. The defendant refused to ship any more ice and stated in a letter to the plaintiff that he had sold all of the remaining ice in question to the persons who had submitted offers to him. The plaintiff thereafter paid for the ice shipped from June 1, to July 6, 1918, at the rate of $1.50 per ton.

Plaintiff's 12th exception was taken to the ruling of the court that said contract did not require the defendant to submit to the plaintiff said *bona fide* offers before the plaintiff (1) was required to elect whether it would forfeit the amount of ice specified in the offers or pay the increased price for said ice. The plaintiff in its brief cited a number of authorities to the effect that when the language of a contract is obscure,

ambiguous or contradictory the court will if possible adopt that construction which establishes a comparatively equitable contract rather than one which places one of the parties entirely at the mercy of the other. The plaintiff suggests that unless the defendant was required to submit said offers to the plaintiff it would have been possible for the defendant, when he had received no offers, to have reported that he had received a *bona fide* offer in writing at a price equal to or in excess of $1.50 per ton and by such fraud require the plaintiff to elect whether it would forfeit the amount of ice specified in such pretended offer or pay the additional price.

The plaintiff and the defendant were rivals in business. No other wholesale ice dealer had a business located either in the city of Providence or within ten miles from said city and while the plaintiff was suspicious as to the genuineness of said offers the defendant suspected that the plaintiff, if it knew the name of his customer, would induce such customer by offering to sell him ice at a lower price, to withdraw his offer. There is testimony to the effect that the plaintiff before said contract was executed had learned the names of some of the defendant's customers and had induced them, by underbidding the defendant, to purchase their supply of ice from the plaintiff. It is evident that the construction placed on said contract by the trial court might work a hardship on the plaintiff and also that the construction contended for by the plaintiff might give it an unfair advantage over the defendant.

The contract was carefully prepared. Several drafts with varying provisions were submitted to the defendant before the final draft was executed. The plaintiff does not contend that it was orally agreed that said offers would be submitted to the plaintiff but that the court should construe said contract to mean the same as it would mean if a provision requiring said offers to be submitted to the plaintiff had been inserted in said contract. We are of the opinion that the language of said contract is not obscure, ambiguous

or contradictory and that the court would not be warranted in reading into said contract the words "and submit said offer or offers to the party of the second part." 13, *Corpus Juris*, at page 524, states the rule as follows: "The intention (2) of the parties is to be deduced from the language employed by them, and the terms of the contract, where unambiguous, are conclusive, in the absence of averment and proof of mistake, the question being, not what intention existed in the minds of the parties, but what intention is expressed by the language used. When a written contract is clear and unequivocal, its meaning must be determined by its contents alone; and a meaning cannot be given it other than that expressed. Hence words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed. Where the contract evidences care in its preparation, it will be presumed that its words were employed deliberately and with intention." See *Lewis Pub. Co. v. Greene*, 40 R. I. 309; *Hassett v. Cooper*, 20 R. I. 585; *Harrington v. Law*, 90 Atl. (R. I.) 660; *Richmond v. N. Y., N. H. & H. R. R. Co.*, 26 R. I. 225. The plaintiff's 12th exception is overruled.

Exceptions 28, 30, 31, 52, 53 and 57 each presents the same question as exception 12 and each is overruled.

The 24th and 25th exceptions were taken to the ruling of the court refusing to strike out testimony of certain witnesses. Each of said exceptions is without merit and is overruled.

The 35th exception was taken to the refusal of said justice to grant the plaintiff's 1st request to charge, which request was as follows: "That under the contract the defendant was required to notify the plaintiff that he had *bona fide* offers in writing if he desired to take advantage of the same." As the defendant, in some of his letters, notifying the plaintiff that defendant had received offers for some of said ice, failed to state that said offers were *bona fide* and in writing, the plaintiff contends that it was not required to elect whether it would forfeit the amount of ice specified in said letters or

pay the increased price and that by refusing to elect it did not forfeit any of the ice specified in said letters.   In making this contention the plaintiff relies upon the following language of the contract: "In the event that the party of the first part receives, in writing, a *bona fide* offer or offers in any year during the term of this contract of One Dollar Fifty Cents ($1.50) per ton, or more F. O. B. ice houses at Abbott Run."   The plaintiff knew when it received notice of each of said offers that the notice was given for the purpose of requiring the plaintiff to elect in accordance with the terms of the contract whether the plaintiff would forfeit the amount of ice specified in the notice of offer or pay the increased price.   From the correspondence between the parties it is clear that the language of said letters did not mislead the plaintiff.   It made no objection to the form of notice but demanded that the offers be submitted for the plaintiff's inspection.   The 35th exception is overruled.

Exceptions 26, 29, 32 and 36 to 40 inclusive each presents the same question as does Exception 35.   Each of these exceptions is overruled.

The 54th exception is to a ruling modifying the plaintiff's 24th request to charge, which request was as follows: "That under the terms of the contract the plaintiff upon notification by the defendant that he had *bona fide* offers in writing for certain of the ice was entitled to have either the offer or offers themselves presented to it or proper proof of the same presented to it before it was obliged to notify the defendant whether it would take the ice contained in the offer or offers at the increased price or forfeit the same."   The trial court, after giving the charge as requested, added the following: "I instruct you in regard to that it was the duty of the defendant to meet the plaintiff properly for the purpose of ascertaining whether these were *bona fide* offers but in this case I find that the defendant did make offers to have it determined as to whether they were *bona fide* or not and that the plaintiff offered no constructive criticism of the offers that the defendant had made.   So I instruct you that

while it may have been the duty of the defendant to submit to some fair method of determining whether these were *bona fide* or not, that he was not asked nor was any suggestion made by the plaintiff as to what such examination should· be." The court was referring to testimony which was not only uncontradicted but was true. The letters in which the defendant offered to refer the written offers for ice to Mr. Angell or Mr. Chace were introduced in evidence by the plaintiff. That the court in a charge may refer to such testimony see *Podrat v. Narragansett Pier R. R. Co.*, 32 R. I. at 264. We find no impropriety in the statement of the court that "the plaintiff offered no constructive criticism of the offers (to refer offers for ice to Messrs. Angell and Chace) that the defendant had made." The plaintiff does not even suggest that it made any constructive criticism. The 54th exception is overruled.

Exception 33 presents the same question as Exception 54 and is overruled.

The 68th exception is without merit and is overruled.

Exceptions 69 and 70 each presents substantially the same question as Exception 12 and each is overruled.

(4) Exception 41 is to the ruling of the trial court modifying the plaintiff's 8th request to charge. Exception 42 is to the ruling modifying the plaintiff's 9th request to charge. Exception 43 is to the ruling denying the plaintiff's 10th request to charge. The evidence does not warrant the assumption of fact upon which each of said requests, 8, 9 and 10, was based. Exceptions 41, 42 and 43 are overruled.

The 34th exception is to the ruling of the trial court modifying the plaintiff's 40th request to . charge, which request was as follows: "That under the contract the plaintiff was entitled to three carloads of ice daily, and if the jury find that they did not receive three cars daily they may consider this a breach of the contract and the jury may assess such damages as they may find to be due because of such breach." After reading said request to the jury, the court said: "You are so instructed except that if the

official of the Ice Company spoken of in the testimony of Mr. Bowen as a fact told Mr. Bowen that he would take his instructions as to what deliveries he should make from the Boston concern and in pursuance of such authority to take these instructions, the amount was reduced, then of course he would not have been called on to ship three cars a day. . . . If you find it was an impossibility, not through his own act but through the act of the railroad, being unable to furnish him three cars a day to load, then of course you might consider that in figuring the amount that he would be required to ship, because this intervening agency came in and this contract must have been made with the knowledge that the railroad had to take the material." If the plaintiff directed the defendant to ship only the amount of ice requested by the Boston Ice Company and the defendant in compliance with said Ice Company's request shipped less than three cars per day the plaintiff has no cause for complaint. The contract required the plaintiff to pay all freight and did not require the defendant to deliver ice at the place of business of the plaintiff or its customers but only on the cars at defendant's ice houses. The 34th exception is overruled.

The 66th exception presents the same question as the 34th exception and is also overruled.

The 64th exception is without merit and is overruled.

The 63rd exception is to a ruling modifying the plaintiff's 34th request to charge, which was as follows: "That if the plaintiff within a reasonable time after receipt of notification from the defendant that he had so-called *bona fide* offers in writing for ice notified the defendant that it would take the ice and would not forfeit it and would pay the increased price if the offers were in fact genuine, the plaintiff fully complied with the terms of the contract in this respect, and whether the plaintiff would be obliged to pay an increased price or not would depend upon later proof as to the genuineness of the offers." After reading said request the court said: "I so instruct you, with this exception,—unless this

notice was coupled with unreasonable demands requiring the defendant to do something which, under the terms of the contract, he was not required to do." While in some of its letters the plaintiff did state that it would not forfeit the ice, the statement was coupled with a demand that the offers be presented for the plaintiff's inspection. The plaintiff at no time without equivocation "notified the defendant that it would take the ice and would not forfeit it and would pay the increased price if the offers were in fact genuine." On June 8, 1918, in reply to the last notice which the defendant gave that he had received offers in accordance with the provisions of the contract the plaintiff wrote:

"We beg to acknowledge receipt of your favor of the 7th inst. in which you say you 'have *bona fide* offers for 1,700 tons of that portion of the ice coming to you (us) from Abbott Run, etc., and asking us whether or not we 'will pay the difference in price as expressed in that contract.'

"Replying thereto we beg to assure you that we will pay any 'difference in price as expressed in that contract' not only for the 1,700 tons just mentioned, but for any and all of our portion of the Abbott Run ice, and will do so whenever the price to be paid by us is properly established under the terms of the contract referred to.

"We do not admit the correctness of your statement that 'the above offer covers more than the balance of the ice coming to you' (us).

"Your offer to 'place the offers in the hands of Mr. Arnold B. Chace or Mr. William C. Angell or both' is the same offer made to us by you under date of May 10th and is subject to the same reply as made to you by us under date of May 15th.

"We ask your attention to the following closing paragraph in our letter to you May 28th:

" 'We have heretofore, perhaps a number of times, informed you what is necessary for you to do in order to establish this year's price, and we are still waiting for reasonable action on your part with reference thereto.' "

In the above letter plaintiff states that it will pay the increased price "whenever the price to be paid by us is properly established under the terms of the contract referred to," but the letter clearly shows that the plaintiff was still contending that the price could be "properly established under the terms of the contract," only by submitting the offers for the plaintiff's inspection. The plaintiff contended that the contract gave the plaintiff the right to refuse to elect whether it would forfeit the ice, until after the offers were submitted for the plaintiff's inspection but this contention, as we have already pointed out, was untenable. The plaintiff relied upon its construction of the contract and did not elect to take the ice. It was necessary for the defendant in the proper management of his business either to accept or reject, within a reasonable time, the offers which he received and we think he was justified in concluding, notwithstanding the plaintiff's statements that it would not forfeit the ice, that the plaintiff did not intend to decide whether it would forfeit the ice until after the plaintiff was permitted to inspect the offers. In our opinion the trial court did not err in modifying the plaintiff's 34th request to charge. The 63rd exception is overruled. The 55th exception presents the same question as the 63rd exception and is overruled.

The 58th exception is without merit and is overruled.

The 49th exception is to the refusal of the trial court to grant the plaintiff's 19th request to charge. Said request was based on a misstatement of the evidence. The 49th exception is overruled.

The 50th exception is to the refusal of the court to grant plaintiff's 20th request to charge, which request was as follows: "That if the jury find that some of the ice was forfeited, then the balance of the ice which was not forfeited and which the plaintiff did not agree to pay for at the rate of $1.50 per ton could be charged only at the rate of $1.00 per ton." The plaintiff received 2,358 tons of ice. There was evidence to the effect that the plaintiff had forfeited all

ice which according to the terms of the contract the defendant had agreed to deliver except 1,443 tons and the jury evidently found that the plaintiff had forfeited all of said ice which the defendant, by the terms of the contract, had agreed to deliver except 1,443 tons.   If all of the ice except 1,443 tons was forfeited, the plaintiff, having received 2,358 tons, received 915 tons of ice more than the contract gave the plaintiff the right to demand.   There is no evidence that the payments for ice amounted to more than $1.00 per ton for 1,443 tons and the fair market value of 915 tons.   The court gave the substance of said request in charging as follows: "There is a statement that they paid $1.50 for some ice.  Well, if they did and it shouldn't have been $1.50 and it was an overpayment, by mistake or by claiming to be *bona fide* and it wasn't *bona fide*—the company would be entitled to have back 50 on each ton."   The 50th exception is overruled.

The 51st exception is to the refusal of the court to grant plaintiff's 21st request to charge, which was as follows: "That under the terms of the contract the defendant could not require the plaintiff to pay an increased price for the ice covered by the contract or forfeit any of said ice until all of the defendant's ice in the Abbott Run ice house was first sold by him, and in this case, as the defendant has offered no evidence that he had in fact sold all of his half of the ice in the ice house before he received, as he says, *bona fide* offers he cannot claim that the plaintiff is in default."   Said contract in no way provides as to how or when the defendant shall dispose of the portion of his ice which he did not agree to sell the plaintiff.   Nothing is contained in the contract to prevent the defendant from entirely withholding his half of the ice from the market.   The defendant's half of the ice was no part of the subject of the contract between the parties.   As this court said in *Richmond v. N. Y., N. H. & H. R. R. Co.*, 26 R. I. at 227, "We can not conceive that it could have been in the minds of the parties thus to limit the operation of the contract, without some express words to that effect."   See also 13 *Corpus Juris* p. 524.   In no one

of the numerous letters written by the plaintiff insisting that the written offers be submitted to the plaintiff was it suggested that the contract required the defendant to dispose of all of his half of the ice before he had the right to require the plaintiff to elect whether it would forfeit the ice specified in the notice of offer or pay the increased price. See *Hassett v. Cooper*, 20 R. I. 585. The 51st exception is overruled.

The 27th exception is to the ruling of the court refusing to direct a verdict for the plaintiff. The plaintiff never elected to take the ice. Whether the defendant had *bona fide* offers in writing was clearly a question of fact for the jury. The 27th exception is overruled.

The 71st exception is to the refusal of the trial court to grant the plaintiff a new trial. The plaintiff argues that a portion of the ice was sold before the plaintiff had an opportunity to accept or reject it. The testimony was conflicting upon this issue. If the defendant did accept an offer of $2.00 per ton for ice before giving notice to the plaintiff that he had received said offer the defendant did not thereby deprive himself of the ability to perform his part of the contract with the plaintiff. He requested the plaintiff to elect whether it would forfeit the amount of ice specified in said notice or take said amount of ice at the increased price. If the plaintiff had elected to take said amount of ice the defendant could have supplied both customers. Said written contract gave the plaintiff the right to receive, by complying with the terms of said contract 7,343 tons of ice from the defendant's said ice houses but the plaintiff was not entitled to receive any specific ice which had been separated from other ice of the defendant in said ice houses. The question was submitted to the jury with proper instructions. The justice who presided at the trial has refused to grant a new trial and we find no reason for disturbing the verdict of the jury which has been approved by the trial court. The 71st exception is overruled.

The 62nd and 65th exceptions are without merit and are overruled.

We have examined each of the plaintiff's exceptions and find each of them to be without merit.

All of the plaintiff's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

*Green, Hinckley & Allen,* for plaintiff.

*Frank L. Hinckley, Abbott Philips, Clifford A. Kingsley,* of counsel.

*McGovern & Slattery,* for defendant.

*John H. Slattery,* of counsel.